## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL B. SILVERSTEIN,** | : | **No. 3:04cv1262** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GENE PERCUDANI; GERALD A.** | : | |
| **POWELL; CHASE MANHATTAN** | : | |
| **MORTGAGE CORP.; CHAPEL CREEK** | : | |
| **HOMES, INC.; RAINTREE HOMES, INC.;** | : | |
| **HOMES BY VINTAGE, INC.; Y-RENT;** | : | |
| **CHAPEL CREEK MORTGAGE BANKER,** | : | |
| **INC.; CHAPEL CREEK MORTGAGE,** | : | |
| **INC.; GEORGE D. MILLER; WILLIAM** | : | |
| **SPANER; JOHN DOE TITLE COMPANY;** | : | |
| **JOHN DOE ABSTRACT COMPANY; and** | : | |
| **JOHN DOE MORTGAGE BROKER,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court for disposition are nine motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  Additionally before the court is a motion to strike and for a more definite statement.  Each motion has been fully briefed and is ripe for disposition. For the following reasons, we will grant the motion to strike and for a more definite statement. We will grant the motion to dismiss filed by Defendant Chase Manhattan Mortgage Corp. ("Chase") and William Spaner ("Spaner") in part and deny it in part.  We will deny the remaining motions.

I.       **Background**[1]

Plaintiff Carl Silverstein ("Plaintiff") alleges that he and his family purchased a new construction house in Tobyhanna, Monroe County, Pennsylvania through the "Why-Rent" program operated and controlled by Defendants Gene Percudani ("Percudani") and Gerald A. Powell ("Powell").  He agreed to purchase land without a home, and simultaneously entered into a building contract to place a new home on the land.  The home was built either by Chapel Creek Homes, Inc., Homes by Vintage, Inc., or Raintree Homes.  Percudani and Powell either individually or in tandem owned and controlled these three companies.  Plaintiff obtained the mortgage on his home from either Chapel Creek Mortgage, Inc., or Chapel Creek Mortgage Banker, Inc.

Plaintiff alleges that the "Why-Rent" program was a fraudulent scheme to induce potential buyers to purchase homes at inflated prices.  Beginning in 1994, Percudani, Powell, Chapel Homes, Chapel Mortgage, and Raintree ran radio, print, and television advertisements in New York and New Jersey to induce customers to purchase and finance homes in Tobyhanna, Pennsylvania, at prices well in excess of the houses' actual fair market value.  The advertisements offered new homes for a $1000 down payment and monthly payments of $685, while the defendants knew that the monthly payments would far exceed that amount.  When a consumer responded to the advertisement, he was provided with an appointment to come to the Poconos for a meeting with an employee.   To confirm the appointment, the defendants sent

---

[1] The following facts are derived from the complaint.

the potential buyer a letter praising the Pocono region, assuring that no gimmicks were involved, and providing in fine print that the price quote was based on a specific calculation available solely to qualified applicants.

During the ensuing meeting, the customer was advised by the defendants that they would "take care of everything," including financing, appraisal, title insurance, and an attorney to protect the clients' interests.  The customer was also informed that the seller would pay his rent and other obligations on his former home.

After the customer agreed to buy the home, he was "passed off" to Chapel Creek Mortgage or Chapel Mortgage Banker, which are owned and operated by Percudani and Powell.  The customers were never informed of the affiliation.   The customer then took out a promissory note from Chapel Mortgage, although Defendant Chase Manhattan Bank provided the funds.  Chase and its agent, Spaner, approved the loan in exchange for Chapel's agreement that Chase would purchase the note and mortgage from Chapel immediately after closing.

After the home was built, Raintree arranged for an appraisal by Defendant George Miller.  Then, in furtherance of the conspiracy, Miller overvalued the home with an estimate that exceeded industry loan-to-value ratios as well as the fair market value of the home.  Chase did not perform its own appraisal, but relied on Miller's appraisal even though it knew the appraisal was inaccurate.

Following the mortgage approval and completion of the construction of the house, the defendants discouraged the purchaser from hiring his own attorney.   At the closing, the tax assessments were based on undeveloped land, although a completed home was located on the

3

property, and as a result the tax figures are unrealistically low.  The customer was then provided with his monthly payments, which exceeded the originally quoted price.

Following the closing, Chase immediately purchased the loans from Chapel Mortgage. After holding the loan for a required time period, Chase sold the loans to Freddie Mac or Fannie Mae, securing its profit from the scheme.

Based on the following scheme, Plaintiff asserts five claims in his *pro se* complaint. He asserts one claim  pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), against Percudani, Powell, Chapel Homes, Chapel Mortgage, and Raintree (collectively "the Percudani defendants").  He asserts a second §1962(c) RICO claim against Chase and Spaner (collectively "the Chase defendants"), and a §1962(d) RICO conspiracy claim against Miller.  He asserts one claim against every defendant under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1 et seq. ("UTPCPL"), and one negligent misrepresentation claim against all defendants.

## II.    Jurisdiction

Since a federal question is before the Court under RICO, this court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  This court also has supplemental jurisdiction over the plaintiff's claims that arise under state law, pursuant to 28 U.S.C. § 1367(a), as these claims are "part of the same case or controversy" as the plaintiff's federal claims.   A federal district court exercising supplemental jurisdiction over state law causes of action must apply the substantive law of the State as interpreted by the State's highest court.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 189 (3d

Cir. 1998).

**III.     Standard**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**IV.     Discussion**

Presently before the Court are nine motions to dismiss.  Defendant Gerald Powell has filed a motion to dismiss for failure to satisfy the statute of limitations.  The Chase defendants have filed a motion: 1) to dismiss the UTPCPL and negligent misrepresentation claims as insufficient as a matter of law; 2) to strike the class action and attorneys fee portions of the pleadings as irrelevant; and 3) for a more definitive statement, arguing Plaintiff's RICO claim is not pleaded with the requisite specificity.  The Percudani defendants have filed a motion to dismiss arguing that Plaintiff's claims are barred by the parol evidence rule.  They also filed a separate motion arguing that Plaintiff's wife, Terry Silverstein, is an indispensable party. Raintree and Chapel Creek Mortgage Banker have each filed a motion to dismiss arguing that Plaintiff's complaint fails to allege how either entity caused the Plaintiff any harm or damage. They also have filed separate motions arguing that Plaintiff's wife should be joined as an

5

indispensable party.  Finally, Miller has filed a motion to dismiss joining in the motions filed

by the other defendants.

For the reasons that follow, we find that Plaintiff has included immaterial class action

allegations, and we will strike them accordingly.  Furthermore, he has failed to properly plead

his RICO claims, and we will order him to provide a more definite statement.  We will order

Plaintiff to join his wife as a necessary party in the amended complaint.  Finally, we will

dismiss the negligent misrepresentation and UTPCPL claims against the Chase defendants, but

deny the remaining motions to dismiss.

### A.      Motion to Strike

The Chase defendants seek to strike Plaintiff's class action allegations as immaterial to

the present action because Plaintiff does not seek to proceed with a class action.  They note

that the class allegations are "vestiges" of a class action complaint that Plaintiff used as a

template for his complaint.

Upon a motion, a court "may order stricken from any pleading any insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  As

numerous defendants note in their briefs, Plaintiff's complaint is largely a reproduction of a

class action complaint previously filed by other victims of the scheme in Lester v. Percudani,

01cv1182 (Connor, J.).  Plaintiff admits that he used the Lester complaint in this case as a

"template."[2]

---

[2] Lester was filed as a class action complaint, but the court denied class certification.

Plaintiff's complaint contains the following paragraph concerning class allegations.

> Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves who purchased a new construction house located in or around Tobyhanna, Pennsylvania through the "Why-Rent" program that was built by either Chapel Homes or Raintree and whose mortgage loan was originated by Chapel Mortgage and later purchased by Chase after closing.

(Pl. Compl. at ¶ 90).

This paragraph is a nearly verbatim copy of paragraph 150 of the complaint in Lester.  The single alteration is whereas the Lester complaint states that the plaintiffs brought the case "on behalf of a Class," Plaintiff states that he brings his complaint "on behalf of themselves [sic]."  This change evinces intent to bring a personal action, and not a class action.  Federal Rule of Civil Procedure 23, the subject matter of paragraph 90, provides the necessary elements for class action claims, and is irrelevant to personal actions.

In addition, Plaintiff has not opposed the Chase defendants' motion to strike and his complaint specifically states "[t]his is as personal lawsuit on behalf [of] Carl Silverstein and his family, who purchased a new construction house in Tobyhanna, Monroe County, Pennsylvania through the 'Why-Rent' program operated and controlled by Gene Percudani and Gerald A. Powell." (Pl. Compl. at ¶ 1) (emphasis added).

Significantly, Plaintiff's single class action paragraph fails to satisfy the class action pleading requirements.  A class action complaint "shall bear next to its caption the legend , 'Complaint - - Class Action.'"  L.R. 23.1.  Plaintiff's complaint contains no such

legend.  Furthermore, he failed to satisfy the following requirements:

> The complaint shall contain under a separate heading, styled 'Class
> Action Allegations':. . .
>
>> (b) Appropriate allegations thought to justify such claim,
>> including but not limited to:
>>
>>> (1) The size (or approximate size) and definition of the
>>> alleged class,
>>>
>>> (2) The basis upon which the plaintiff (or plaintiffs) claims
>>>
>>>> (A) To be an adequate representative of the class . . .
>>>
>>> (3) The alleged questions of law and fact claimed to be
>>> common to the class . . . .

L.R. 23.2.

Plaintiff's complaint does not contain a section with the appropriate class action

heading, nor does it bear any allegation concerning the size and definition of the class,

the Plaintiff's adequacy to represent the class, or the common questions of law and fact.

Accordingly, we find that Plaintiff does not intend to present a class action suit, but as he

states in his complaint, he seeks to bring a suit on behalf of himself and his family.  As

Federal Rule of Civil Procedure 23 relates to class actions, and not personal actions,

paragraph 90 will be stricken as immaterial. [3]

### B.    More Definite Statement

To successfully allege a RICO claim pursuant to 18 U.S.C. § 1962(c), a Plaintiff

---

[3] The Chase defendants also argue that Plaintiff's request for attorney's fees and lost wages should be stricken because he proceeds *pro se*.  Plaintiff concedes that he cannot recover attorney's fees and argues solely that he be permitted to recover costs.  As the Chase defendants do not seek to preclude him from recovering costs, we will grant their motion to dismiss the request for attorney's fees as unopposed.

must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as a direct injury to his business or property resulting from the conduct constituting a violation. <u>Sedima S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985). The fourth prong, "racketeering activity," is defined by enumerated predicate acts in 18 U.S.C. § 1961(1), which include both wire and mail fraud. Where fraud is the predicate act, the pleading is subject to heightened requirements of Federal Rule of Civil Procedure 9(b). <u>Warden v. McLelland</u>, 288 F.3d 105, 114 n.6 (3d Cir. 2002). A complainant must "specify the nature of the predicate acts to a degree that will allow the defendants to comprehend the specific acts to which they are required to answer." <u>Rose v. Bartle</u>, 871 F.2d 331, 363 (3d Cir. 1989) (quoting <u>Ray v. Karris</u>, 780 F.2d 636, 645 (7th Cir. 1985)). Thus, a RICO complaint alleging fraud as the predicate act must "specify the fraudulent statement, the time, place and speaker and content of the alleged misrepresentation." <u>Annulli v. Panikkar</u>, 200 F.3d 189, 201 n.10 (3d Cir. 1999).

Plaintiff's pleading provides a long, detailed account of the defendants' alleged scheme, but fails to make any allegations describing the time, date, and contents of the predicate acts and how they caused his injury. The complaint speaks, in general terms, of how the defendants defrauded 'customers' into purchasing overvalued homes. He does not, however, specify when or how he was defrauded. The portion of the complaint that he failed to copy from the <u>Lester</u> complaint included the details of how the scheme affected the particular individuals bringing suit as well as the necessary details regarding the RICO predicate acts.

If a RICO complaint fails to satisfy the Rule 9 requirements, the court should permit amendment, rather than dismiss the pleading.  <u>Saporito v. Combustion Engineering, Inc.</u>, 843 F.2d 666, 675-76 (3d Cir. 1988) *rev'd and remanded on other grounds*, 489 U.S. 1049 (1990).[4]  Therefore, we will order Plaintiff to file an amended complaint containing a more definite statement of the date, time, and content of Defendants' fraudulent activity.[5]  Should Plaintiff fail to file an appropriate amended complaint within twenty days, we will dismiss his complaint with prejudice.

**C.   Compulsory Joinder**

The defendants argue that Plaintiff's wife, Terri Silverstein is a necessary party pursuant to Federal Rule of Civil Procedure 19(a).[6]  We agree, and will order that he join her as a plaintiff when he files his amended.

---

[4]  Raintree, Chapel Creek Mortgage Banker, Chapel Creek Homes, Inc., Chapel Creek Mortgage, Inc., Homes By Vintage, Inc., Percudani, Y-Rent, Inc and Miller have challenged the sufficiency of the RICO pleadings and requested that we dismiss the complaint.  In light of our decision to require Plaintiff to provide a more definite statement, we will deny their motion to dismiss without prejudice.

[5]  Plaintiff has requested in his briefs, but failed to file a formal motion, for leave to amend his complaint.  Leave is not required for Plaintiff to file an amended complaint at this juncture, as he may file one amended complaint without leave of the court before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  No defendant has filed a responsive pleading, as each has filed a motion to dismiss, which is not a responsive pleading.  <u>Centifanti v. Nix</u>, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989).

[6]  This argument was raised in motions filed by Raintree, Chapel Creek Mortgage Banker, Chapel Creek Homes, Inc., Chapel Creek Mortgage, Inc., Homes By Vintage, Inc., Percudani, Y-Rent, Inc and Miller.

Rule 19(a) requires the joinder of a party who is subject to service of process and who will not destroy the court's subject matter jurisdiction if joined when:

> (1) in the person's absence compete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action may
>
>> (i) as a practical matter impair or impede the person's ability to protect that interest or
>>
>> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).

We find that Plaintiff's wife is a necessary party pursuant to Rule 19(a)(2)(i) because she has an interest in the property allegedly damaged by the defendants' RICO actions, and in her absence her ability to protect her interest in recovering for that damage would be impaired.   Plaintiff's wife co-owns the home in question as a tenant by the entireties, and therefore has an interest in recovering for any damage to the property.

A party must be joined under Rule 19(a)(2)(i) if "some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." Janney Montgomery Scott, Inc., v. Shepard Niles, 11 F.3d 399, 409 (3d Cir. 1993).  Thus, if the collateral estoppel or res judicata effect of our decision in this case will preclude Plaintiff's wife from seeking recovery for damage to

her property in a later suit, she must be joined under Rule 19(a)(2)(i).  "If issue

preclusion or collateral estoppel could be invoked against [the absent party] in other

litigation, continuation of the federal action could 'as a practical matter impair or

impede [the absent party's] interests and so Rule 19(a)(2)(i) would require its joinder if

joinder were feasible."  Id. at 409.

Plaintiff's wife owns the property allegedly damaged by the defendants' RICO

activity.  The present suit seeks to recover for damage to her property.[7]  Thus, if we find

that Plaintiff suffered no damages, and a subsequent court finds his wife to be in privity

with him, she will be precluded from protecting her interest in recovering for damages to

her property.

"[I]in order to sue for damages for injury to the land or to sue for partition, all

cotenants must be before the court in order that each may claim his share."  WRIGHT &

MILLER, FEDERAL PRACTICE & PROCEDURE, § 1621.  For instance, should Plaintiff

litigate this suit to a final judgment on the merits and fail to recover for damage to the

property, Plaintiff's wife may be precluded from raising her own RICO claim against the

defendants if she is found in privity with her husband.  Significantly, Pennsylvania courts

have found the spousal relationship sufficient to establish privity for the purposes of

---

[7] "[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  Sedima, 473 U.S. at 496. Claims for personal loss are not covered by RICO.  Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169 (3d Cir. 1987).  Thus,  Plaintiff's RICO suit seeks recovery for damage to property owned jointly by his wife.

claim and issue preclusion.  See Seamon v. Bell Telephone Co. of Pennsylvania, 576 F.

Supp. 1458, 1460 (W.D. Pa. 1983) (finding that res judicata barred the plaintiff from

bringing her claims where her husband had previously litigated similar claims because

the spousal relationship was sufficient to establish privity).

In Jaillet v. Hill & Hill, the court found that in an action to recover damages to

real property, the plaintiff's joint tenants with rights of survivorship were necessary

parties under 19(a)(2)(i).[8]  460 F. Supp. 1075, 1078-79 (W.D. Pa. 1978).  The plaintiff

alleged that the defendants negligently installed a sewer system, thus increasing the

sewer assessments on his property.  Id. at 1076.  To the extent that she had a claim, her

joint tenants also had a claim.  Id.  The court found that absent joint tenants were

necessary because they were in privity and the doctrine of res judicata would preclude

them from protecting their interest in their property.  Id.

Thus, we find that Plaintiff's wife is a necessary party under Rule 19(a).  She is

the owner of the allegedly damaged property, and our decision may, as a practical matter,

preclude her from recovering for the alleged damage to her property.  Furthermore, our

conclusion is compelled by Plaintiff's claim to seek damage not only on behalf of

himself, but "on behalf of his family."  (Pl. Compl. at ¶ 1).  A *pro se* non-lawyer may not

---

[8] The Jaillett court further held that the absent joint tenants were indispensable parties under Rule 19(b).  Once a court finds that a party is necessary under 19(a), the party must be joined if feasible.  Fed. R. Civ. P. 19(a).  If the party is necessary and cannot be joined, the court must determine pursuant to 19(b) whether the action should proceed without the absent party, or whether the absent party is indispensable and the case must be dismissed rather than proceed without it.  Fed. R. Civ. P. 19(b).

represent the interests of his family in court.  Osei-Afriyie v. Medical College of Pa.,

937 F.2d 876, 883 (3d Cir.1991).  Thus, Plaintiff's wife must represent her own claims

or obtain an attorney to do so.

Next, under Rule 19(b), we must determine whether it will be feasible to join

Plaintiff's wife.  Neither party has suggested that she is unavailable, or that her presence

would destroy jurisdiction.  Plaintiff has assured that she is available and can join in the

litigation.  Thus, we will order that when Plaintiff files his amended complaint, he must

join his wife as a plaintiff.

### D.    Motions to Dismiss

In addition to filing a motion to strike and a motion for a more definite statement,

the Chase defendants have filed a motion to dismiss the UTPCPL claims and the

negligent misrepresentation claims.  The Percudani defendants have filed a motion to

dismiss the negligent misrepresentation claims pursuant to the economic loss doctrine,

as well as every claim pursuant to the parol evidence rule.  Defendant Powell has filed a

motion to dismiss based on the statute of limitations.   Finally, Raintree Homes and

Chapel Creek Mortgage Banker have filed a motion to dismiss arguing that Plaintiff's

allegations, if proven, cannot establish liability.   We will discuss these motions *in

seriatim*.

### 1.    The Chase Defendants

The Chase defendants argue that the UTPCPL and negligent misrepresentation

claims against them must be dismissed because Plaintiff alleges that they made no misrepresentations to him nor did they have a duty to disclose such that omissions could give rise to liability.  We will dismiss the UTPCPL and negligent misrepresentation claims against the Chase defendants because these claims require an actual misrepresentation on the part of the defendant.  Cooper v. Sirota, 37 Fed. Appx. 46 (3d Cir. 2002) (citing Kramer v. Dunn, 749 A.2d 984, 991 (Pa. Super. Ct. 2000)).

**a.    UTPCPL Claims**

The purpose of the UTCPL is to "place on more equal terms seller and consumer" by protecting customers from unfair or deceptive trade practices.  Smith v. Commercial Banking Corp., 866 F.2d 576, 581 (3d Cir. 1989).  It enumerates seventeen specific actions, including a catch-all provision, that constitute unfair or deceptive trade practices.  73 PA. CONS. STAT. § 201-2(4).  The statute creates a private cause of action for consumers injured by unfair or deceptive practices in trade or commerce.  73 PA. CONS. STAT. § 201-9.1.  Thus, a plaintiff must establish that: 1) the alleged violations occurred in trade or commerce; 2) the UTCPL grants a private cause of action for the injuries sustained; and 3) the alleged actions fall within one of the seventeen identified categories of unfair or deceptive trade practices.  Smith, 866 F.2d at 581.

The UTPCPL's "underlying foundation is fraud prevention."  Toy v. Metropolitan Life Ins. Co., 863 A.2d 1, 10-11 (Pa. Super. Ct. 2004).  Furthermore, "[n]othing in the legislative history suggests that the legislature ever intended statutory language directed at consumer fraud to do away with the traditional common law elements of reliance and

causation." <u>Weinberg v. Sun Co.</u>, 777 A.2d 442, 446 (2001).  Therefore, "[t]o bring a

private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied

on the defendant's wrongful conduct or representation and that he suffered harm as a

result of that reliance." <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 439

(Pa. 2004) (citing <u>Weinberg</u>, 777 A.2d at 446 (2001)); <u>see also</u> <u>Gilmour v. Bohmueller</u>,

No.CIV.A.04-2535, 2005 WL 241181, at * 10 (E.D. Pa. Jan. 27, 2005).

Plaintiff alleges that the Chase defendants made no representation or that he

justifiably relied on their conduct.  Plaintiff alleges that Chase participated in the

defendants' conspiracy by purchasing the home buyer's inflated mortgage loans from

Chapel Mortgage without first engaging in the normal underwriting procedures, including

appraisals, to determine the appropriate value of the loan.  (Pl. Compl. at ¶ 51-53).

Chase would then sell the loans to Fannie Mae or Freddie Mac to ensure its profit from

the Plaintiff's mortgage.  (<u>Id.</u>).  During this process, Chase and its representative, Spaner,

have no contact with the home buyer and make no representations.  In fact, Plaintiff

specifically alleges that Chase and Spaner's participation in the conspiracy transpired

"unknown to the buyer."  (<u>Id.</u> at ¶ 51).

Thus, Plaintiff has alleged that the Chase defendants made no representations.

Furthermore, Plaintiff's allegations are insufficient to impose liability for failure to

disclose because they cannot support a claim that the Chase defendants had a duty to

disclose information.  "The Pennsylvania common-law requires the existence of a

confidential relationship as prerequisite to liability for omissions." <u>Antinoph v. Laverell</u>

Reynolds Sec., Inc., 703 F. Supp. 1185, 1187-88 n.1 (E.D. Pa. 1989) (citing City of

Harrisburg v. Bradford Trust Co., 621 F. Supp. 463 (M.D. Pa. 1985)).

In Sexton v. PNC Bank, the plaintiff alleged that the defendant's three dollar fee

to cash a check violated the UTPCPL.  792 A.2d 602, 603-04 (Pa. Super. Ct. 2002).  The

court dismissed the claim on the pleadings because the plaintiff failed "to allege that she

incurred the fee in reliance upon any representations by a bank employee, or that the

bank did not disclose the fee."  Id. at 608.

Similarly, in Cara Corp. v. Continental Bank, the court dismissed a fraud claim for

failure to plead justifiable reliance.  148 B.R. 760, 774-75 (Bankr. E.D. Pa. 1992).

There, the plaintiff argued that the defendant bank failed to disclose that "a large

customer of the [plaintiff] which was also a customer of the Bank, was in financial

distress and that, as a result, the Debtor continued to do business with [the customer] to

its financial disadvantage.  Id. at 763.   The court found that the bank had no duty to

disclose the information, noting that "the lender-borrower relationships do not ordinarily

create fiduciary duties."  Id.  at 773.  The court recognized that "a fiduciary duty may

arise between a lender and a borrower where the lender gains substantial control over the

borrower's business affairs" but found that the plaintiff had not demonstrated that this

situation was present.  Id.  Furthermore, the plaintiff could not establish that it justifiably

relied on the bank's omission because it neither sought advice from the bank, nor

responded to the bank's actions in any way.  Id. at 774.

The Cara court relied heavily on Peoples Bank of Virgin Islands v. Figueroa,

wherein the court addressed a bank's duties to disclose information to its customers.

559 F.2d 914 (3d Cir. 1977).  In Figueroa, two co-signors on a loan brought suit against

a bank because the bank failed to disclose that the principle obligor was in a "shaky"

financial condition and the principle obligor's partner, a bank director, violated Virgin

Islands law with regards to the loan.  Id. at 915-16.  The court found that the bank had no

duty to disclose and the co-obligors could not establish justifiable reliance because "the

Bank neither procured the endorsers nor induced them to endorse, nor was the Bank

asked for any financial details pertaining to Figueroa's account."  Id. at 919.

Similarly, Plaintiff does not allege that the Chase defendants induced him to

purchase or mortgage the home, that they offered any representation, nor that he sought

any representation.  Plaintiff does not allege that he was aware of Chase and Spaner's

activities before purchasing his home, much less that he justifiably relied on their

conduct.  Furthermore, he specifically alleges that Chase and Spaner's participation in

the conspiracy transpired "unknown to the buyer."  (Pl. Compl. at ¶ 51).  Therefore, he

fails to state a private cause of action under the UTPCPL against Chase and Spaner and

we will dismiss these claims accordingly.

### b.        Negligent Misrepresentation

Chase and Spaner present a similar argument with regard to the negligent

misrepresentation claims.  They assert that Plaintiff does not state a negligent

misrepresentation claim because he does not allege that they made any representation or

had a duty to disclose.  We agree.

18

To prove a cause of action for negligent misrepresentation under Pennsylvania law, a plaintiff must establish the following four elements:

>  (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

Weisblatt v. Minnesota Mut. Life Ins. Co., 4 F. Supp. 2d 371, 377 (E.D. Pa. 1998) (citing Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994)).

As discussed previously, Plaintiff does not allege that Chase or Spaner made any misrepresentation or supplied any false information.   Furthermore "[a]n omission or nondisclosure is only actionable under the theory of negligent misrepresentation if there is a duty to speak."  Id. at 380.  In his complaint, Plaintiff offers the conclusory statement that the defendants all had a duty to speak truthfully about the value of the home, but alleges no facts that would establish such a duty on the part of the Chase defendants.  In analyzing the sufficiency of the complaint, we are not required to accept as true conclusions of law.  Kost v. Kozakiewicz, 1 F.3d 176 (3rd Cir.1993).

"There is no duty on the part of a lender to inspect the mortgaged property to determine that the borrower is obtaining that which he may have been promised by the vendor or that which he believes he is obtaining."  Federal Land Bank of Baltimore v. Fetner, 410 A.2d 344, 348 (Pa. Super. Ct. 1979); see also Figueroa, 559 F.2d at 916-17 (finding no duty for a bank to disclose the poor financial condition of its customer to a

potential co-signor on a loan); <u>Bradford Trust Co.</u>, 621 F. Supp. at 474-75 (noting that a

duty to disclose arises from a fiduciary or other close relationship wherein the defendant

is aware of the plaintiff's reliance on the defendant).

Plaintiff's factual allegations cannot support the conclusion that the Chase

defendants owed a duty to disclose their actions to Plaintiff.  He has failed to plead any

facts that, if proved, could demonstrate that Chase had a fiduciary duty to him, had

revealed half-truths, or had any relationship whatsoever that could give rise to a duty to

disclose information.  He alleges that he had no contact with the Chase defendants at all,

much less that he sought information from them.  Indeed, Plaintiff claims he was

completely unaware of their activities.  As Plaintiff does not allege that the Chase

defendants made any representation to him or had a duty to disclose, he does not state a

claim for negligent misrepresentation.  Therefore, we will dismiss the negligent

misrepresentation claim against the Chase defendants.

### 2.    Economic Loss Doctrine

The defendants argue that Plaintiff's negligent misrepresentation claim must be

dismissed pursuant to the economic loss doctrine.[9]  The economic loss doctrine

precludes a plaintiff "from recovering purely economic losses suffered as a result of a

---

[9]  This issue was raised by Defendants Chapel Creek Homes, Inc., Chapel Creek Mortgage, Inc., Homes By Vintage, Inc., Percudani, Y-Rent, Inc, Chase, and Spaner.  As it relates to the Chase defendants, this issue is moot as we will dismiss the negligent misrepresentation claim against them on other grounds.

defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." Ellenbogen v. PNC. Bank, N.A., 731 A.2d 175, 188 n.26 (Pa. Super. Ct. 1988).  Plaintiff's negligent misrepresentation claim alleges that the defendants made material misrepresentations regarding the value of his home, and as a result he purchased his home at a fraudulently inflated price.   The defendants rely on the decision in the related case, Lester v. Percudani, to apply the economic loss doctrine.

Subsequent to the decision in Lester, the Pennsylvania Supreme Court has held that the economic loss doctrine does not apply to negligent misrepresentation claims. Bilt Rite Contractors v. Architectural Studio, 866 A.2d 270, 288 (Pa. 2005).  In determining state law issues properly before the Court pursuant to our supplemental jurisdiction, Pennsylvania Supreme Court decisions are controlling.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 189 (3d Cir. 1998).

 "[W]e hold that the economic loss rule does not apply to claims of negligent misrepresentation sounding under [Restatement (Second) of Torts] Section 552." Bilt Rite, 866 A.2d at 288.  In Bilt Rite, a contractor engaged in building a school brought suit for negligent misrepresentation against the architect alleging that his specifications were false and misleading and seeking damages for increased construction costs.  Id. at 272-73.  The court expressly adopted Restatement (Second) of Torts § 552 ("Section 552") in the context of design professional cases, and found that the plaintiffs claim fit

21

within its parameters.  This section provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552.

The court found that the contractor's reliance on the architect's design was both justifiable and foreseeable and therefore the claim fell "squarely within Section 552." Id. at 275.  The court then dismissed the defendant's assertion that the economic loss doctrine precludes recovery for negligent misrepresentation claims, finding that "economic losses resulting from negligent misrepresentation are an exception to the economic loss doctrine." Id. at 284 (citing Nota Constr. Corp. v. Keyes Assoc., 694 N.E.2d 401 (1998)).   It stated that "a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law." Id.  at 288.  The purpose of the economic loss doctrine is to preserve the dividing line between tort and contract theories, while "recognizing the realities of modern tort law." Id.  Therefore, the court reasoned that the proper inquiry is not whether the damages alleged are purely physical or economic, but instead is whether the source of the duty the defendant allegedly breached is based in contract or tort.  Id.  Thus, where the source of the duty is in tort, the nature of the alleged harm is irrelevant.  Id.  It further reasoned that "to apply the economic loss doctrine in the context of a Section 552 claim would be nonsensical: it would allow a party to pursue an action only to hold that, once the elements of a cause of action are shown, the party is unable to recover for its losses." Id.

We find that <u>Bilt-Rite</u> controls our present inquiry.  Plaintiff alleges that the defendants supplied him with false information in a transaction in which they had a pecuniary interest, that they intentionally coerced Plaintiff into relying on the information, and their actions caused him pecuniary loss.  Therefore, Plaintiff's complaint sufficiently alleges that the defendants violated a duty sounding in tort, and the economic loss doctrine does not apply.

### 3.    Parol Evidence

The Percudani defendants argue that we must dismiss Plaintiff's claims because the parol evidence rule will preclude any evidence of the defendants' fraud occurring prior to or during the negotiation of Plaintiff's agreement to purchase his home.  We find that the application of the parol evidence doctrine is premature at this time.

The Pennsylvania Supreme Court has explained the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.  All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties.

<u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 436 (Pa. 2004).

The parol evidence rule applies when the contract between the parties is the final and complete expression of their agreement.  <u>Id.</u>   Thus, in the absence of an integration clause demonstrating the parties' intent that the writing is the final and entire agreement, parol evidence is admissible to prove fraud in the negotiation of a contract.  <u>Youndt v. First Nat'l Bank of Port Allegany</u>, 868 A.2d 539, 546 (Pa. Super. Ct. 2003).  Plaintiff's pleadings do not

contain any written agreement.  The Percudani defendants have failed to direct the Court to a

single written contract that covers or purports to cover the entire agreement of the parties.[10]

Therefore, based on the pleadings and evidence of record, we cannot at this juncture determine

the application of the parol evidence doctrine.  Accordingly, we will deny the motion to

dismiss based on the parol evidence doctrine.

### 4.    Statute of Limitations

Defendant Gerard Powell argues that the claims against him are barred by the statute of

limitations.  He notes that Plaintiff purchased his home in 1994, ten years prior to filing the

suit and argues that Plaintiff should have discovered the true value of his home within two or

three years of purchasing the property.

Plaintiff advances three claims against Powell: a RICO claim, a UTPCPL claim, and a

negligent misrepresentation claim.  The statute of limitations for RICO is four years, Agency

Holding Corp. v. Malley-Duff & Assoc., 483 U.S. 143, 156 (1987),  for UTPCPL is six years,

Gabriel v. O'Hara, 534 A.2d 488, 496 (Pa. Super. Ct. 1987), and for negligent

misrepresentation is two years.  42 PA. CONS. STAT. ANN. § 5524(7).

For RICO claims, the statute of limitations is tolled until the plaintiff "knew or should

have known of [his] injury."  Forbes v. Eagleson, 228 F.3d 471, 484 (3d Cir. 2000).

Pennsylvania law also tolls the statute of limitations until the plaintiff knew, or should have

---

[10] On a Rule 12(b)(6) motion, the court may consider the pleadings as well as undisputably
authentic documents that form the basis of the pleadings.  Pension Benefit Guar. Corp. v. White Consol.
Indus. Inc., 998 F.2d 1192 (3rd Cir.1994).

known in the exercise of reasonable diligence, of the injury suffered.  Cappelli v. York

Operating Co., Inc., 711 A.2d 481, 484-85 (Pa. Super. Ct. 1998)).

Powell argues that Plaintiff should have known that his home was overvalued within a

year of purchasing it because homes in Pennsylvania are appraised annually for tax purposes,

and we should presume that Plaintiff could have learned of his injury based on the tax

assessments.

We are not in a position, at this juncture, to infer or presume that Plaintiff knew or

should have discovered that his home was overvalued from a tax assessment within a year or

two of purchasing his home.  Indeed, we must make all reasonable inferences in favor of the

plaintiff.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  A

district court should grant a motion to dismiss for failure to satisfy the statute of limitation

solely if the "complaint facially shows non-compliance with the limitations period and the

affirmative defense clearly appears of the face of the pleading."  Oshiver v. Levin, Fishbein,

Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  Nothing in the complaint clearly

demonstrates, or even suggests, that the tax assessments on Plaintiff's home placed him on

notice of his injury.  Therefore, we find it premature to dispose of Plaintiff's complaint for

failure to comply with the statute of limitations, and we will deny Powell's motion.[11]

---

[11]  Defendant Miller has also filed a motion to dismiss on this ground.  He has failed to file an
adequate brief in support and thus we will deem his motion withdrawn.  Miller's brief merely states that he
"joins in all motions and briefs filed by the other defendants and seeks the relief requested therein."   A
movant must file a brief in support of his motion or the motion shall be deemed withdrawn.  L.R. 7.5.
Furthermore, "no brief may incorporate by reference all or any portion of any other brief."  L.R. 7.8.  Thus,
Miller has failed to file a brief in support, as he attempts solely to rely on the briefs of his co-defendants,
and his motion will be deemed withdrawn.

### 5.     Pleading Causation

Raintree and Chapel Creek Mortgage Banker have filed a motion to dismiss Plaintiff's claims arguing that they did not exist when Plaintiff purchased his home, and they are not parties to his transaction.  Therefore, Plaintiff's RICO, UTPCPL, and negligent misrepresentation claims against them must fail because they could not have caused Plaintiff's harm.  For the following reasons, we disagree.

Plaintiff's complaint alleges that Raintree was formed solely for the purpose of continuing the alleged fraud, and Percudani was the sole owner and controlled all of Raintree's actions. (Pl. Compl. ¶ 10).  Similarly, Plaintiff alleges that Chapel Creek Mortgage Banker was controlled at all times by Percudani and Powell.  Thus, taking all inferences in Plaintiff's favor, Plaintiff's allegations, if proven, may be sufficient to impose liability upon Raintree and Chapel Creek Mortgage Banker under a theory of piercing the corporate veil.  See Tr. of Nat. Elevator Indus. Pension, 332 F.3d 188, 196-97 (3d Cir. 2003) (noting that the factors for piercing the corporate veil include lack of corporate formalities and whether the company was created to perpetrate a fraud).  Dismissal pursuant to Rule 12(b)(6) is not proper unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiffs' allegations." Jordan, 20 F.3d at 1261.  Accordingly, we will deny Chapel Creek and Raintree's motion to dismiss because Plaintiff may be able to establish liability under a piercing the corporate veil theory.

## V.     Conclusion

Plaintiff's failure to plead his own case and his reliance on a complaint from a separate case as a "template" causes numerous deficiencies in his pleading.  Initially, he includes class action allegations although he does not seek to advance a class action complaint, and he seeks attorneys fees although he proceeds *pro se*.  Accordingly, these portions of his complaint will be stricken.

Second, he has failed to plead his fraud claim with specificity as required by Federal Rule of Civil Procedure 9.  Therefore, we will grant the Chase defendants' motion for a more definite statement and order Plaintiff to file an amended complaint within twenty days.  The Percudani defendants' motion to dismiss for failure to plead fraud with sufficient specificity will be denied without prejudice, so that they may re-file their motion following the submission of Plaintiff's amended complaint.

Third, Plaintiff has failed to join his wife as a party, although she has an interest in the property allegedly damaged in the RICO scheme and our decision may impede her ability to recover for this damage.  Therefore, we will order that he join her as a plaintiff when he files his amended complaint.

Fourth, Plaintiff's complaint fails to state a UTPCPL claim or a negligent misrepresentation claim against the Chase defendants because he fails to allege that they made any representation or had a duty to disclose.  Accordingly, we will dismiss these claims against the Chase defendants.

We will deny the remaining motions to dismiss, which advance arguments related to the

statute of limitations, sufficiency of the pleadings, the parol evidence rule, and the economic loss doctrine.   Thus, Plaintiff's RICO claims against all defendants remain, along with UTPCPL and negligent misrepresentation claims against all of the defendants except Chase and Spaner.  Plaintiff, however, must re-plead these remaining claims with sufficient specificity. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL B. SILVERSTEIN,** | : | No. 3:04cv1262 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GENE PERCUDANI; GERALD A.** | : | |
| **POWELL; CHASE MANHATTAN** | : | |
| **MORTGAGE CORP.; CHAPEL CREEK** | : | |
| **HOMES, INC.; RAINTREE HOMES, INC.;** | : | |
| **HOMES BY VINTAGE, INC.; Y-RENT;** | : | |
| **CHAPEL CREEK MORTGAGE BANKER,** | : | |
| **INC.; CHAPEL CREEK MORTGAGE,** | : | |
| **INC.; GEORGE D. MILLER; WILLIAM** | : | |
| **SPANER; JOHN DOE TITLE COMPANY;** | : | |
| **JOHN DOE ABSTRACT COMPANY; and** | : | |
| **JOHN DOE MORTGAGE BROKER,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW**, to wit, this 26th day of May 2005, it is hereby **ORDERED** that:

1)     Defendant Chase Manhattan Mortgage Corp. and Defendant William Spaner's motion to partially dismiss, motion for a more definite statement, and motion to strike (Doc. 15) is **GRANTED**.  Count IV and V are **DISMISSED** against  Chase Manhattan Mortgage Corp. and William Spaner.  Paragraph 90 of Plaintiff's complaint is **STRICKEN**.  Plaintiff's request for attorney's fees is **STRICKEN**. Plaintiff is hereby **ORDERED** to file an amended complaint consistent with this opinion within 20 days of the date of this order.  Failure to timely file an amended complaint will result in the dismissal of the complaint with prejudice.

2)     Defendant Gerald A. Powell's motion to dismiss (Doc. 12) is **DENIED**.

3)     Defendant Chapel Creek Mortgage Banker's motion to dismiss (Doc. 18) is **DENIED**.

4)     Defendant Raintree Homes Inc.'s motion to dismiss (Doc. 19) is **DENIED**.

5)     The motion to dismiss filed by Y-Rent, Inc., Chapel Creek Homes, Inc., Chapel

Creek Mortgage, Inc., Homes By Vintage, Inc., and Gene Percudani (Doc. 20) is **DENIED**.  The portion of the motion that challenges the specificity of Plaintiff's claims is denied without prejudice.

6)   The motions to dismiss for failure to join an indispensable party (Doc. 21, 22, 23) are **DENIED**.  Plaintiff is hereby **ORDERED** to join his wife as a plaintiff in his amended complaint.

7)   Defendant George Miller's motion to dismiss (Doc. 44) is **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**