IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL B. SILVERSTEIN, | : | No. 3:04cv1262 |
| TERRY SILVERSTEIN, | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| GENE PERCUDANI; GERALD A. | : | |
| POWELL; CHASE MANHATTAN | : | |
| MORTGAGE CORP.; CHAPEL CREEK | : | |
| HOMES, INC.; RAINTREE HOMES, INC.; | : | |
| HOMES BY VINTAGE, INC.; Y-RENT; | : | |
| CHAPEL CREEK MORTGAGE BANKER, | : | |
| INC.; CHAPEL CREEK MORTGAGE, | : | |
| INC.; GEORGE D. MILLER; WILLIAM | : | |
| SPANER; JOHN DOE TITLE COMPANY; | : | |
| JOHN DOE ABSTRACT COMPANY; and | : | |
| JOHN DOE MORTGAGE BROKER, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Presently before the court for disposition are three motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b). Additionally before the court is a motion to strike a brief. The parties have fully briefed these matters and they are ripe for disposition. For the following reasons, we will grant the motions to dismiss and deny the motion to strike as moot.

**I.    Background**

Plaintiffs Carl and Terry Silverstein ("Plaintiff") allege that they purchased a new construction home in Tobyhanna, Monroe County, Pennsylvania through the "Why-Rent" program operated and controlled by Defendants Gene Percudani ("Percudani") and Gerald A.

Powell ("Powell").[1]

Plaintiffs allege that the "Why-Rent" program was a fraudulent scheme to induce potential buyers to purchase homes at inflated prices. Beginning in 1994, Percudani, Powell, Chapel Homes, Chapel Mortgage, and Raintree ran radio, print, and television advertisements in New York and New Jersey to induce customers to purchase and finance homes in Tobyhanna, Pennsylvania, at prices well in excess of the houses' actual fair market value. The advertisements offered new homes for a $1000 down payment and monthly payments of $685, while the defendants knew that the monthly payments would far exceed that amount. When a consumer responded to the advertisement, he was provided with an appointment to come to the Poconos for a meeting with an employee. To confirm the appointment, the defendants sent the potential buyer a letter praising the Pocono region, assuring that no gimmicks were involved, and providing in fine print that the price quote was based on a specific calculation available solely to qualified applicants.

During the ensuing meeting, the customer was advised by the defendants that they would "take care of everything," including financing, appraisal, title insurance, and an attorney to protect the clients' interests. The customer was also informed that the seller would pay his rent and other obligations on his former home.

---

[1] The following summary is derived from a portion the Amended Complaint outlining the defendants' general fraudulent scheme. This section of the Amended Complaint is identical to the corresponding section of the Complaint, and thus, the following recitation is a reproduction of the background facts in our May 26, 2005 Order that addressed the sufficiency of the original Complaint. In the discussion section, we address the portion of the Amended Complaint that differs from the original complaint.

After the customer agreed to buy the home, he was "passed off" to Chapel Creek Mortgage or Chapel Mortgage Banker, which are owned and operated by Percudani and Powell. The customers were never informed of the affiliation. The customer then took out a promissory note from Chapel Mortgage, although Defendant Chase Manhattan Bank provided the funds. Chase and its agent, Spaner, approved the loan in exchange for Chapel's agreement that Chase would purchase the note and mortgage from Chapel immediately after closing.

After the home was built, Raintree would arrange for an appraisal by Defendant George Miller. Then, in furtherance of the conspiracy, Miller would overvalue the home with an estimate that exceeded industry loan-to-value ratios as well as the fair market value of the home. Chase did not perform its own appraisals, but relied on Miller's appraisals even though it knew them to be false.

Following the mortgage approval and completion of the construction of the house, the defendants discouraged the purchaser from hiring his own attorney. At the closing, the tax assessments were based on undeveloped land, although a completed home was located on the property, and as a result the tax figures are unrealistically low. The customer was then provided with his monthly payments, which exceeded the originally quoted price.

Following the closing, Chase immediately purchased the loans from Chapel Mortgage. After holding the loan for a required time period, Chase sold the loans to Freddie Mac or Fannie Mae, securing its profit from the scheme.

**II.    Procedural Background**

On June 10, 2004, Plaintiff Carl Silverstein filed the Complaint pro se advancing five claims based on the defendants' alleged fraudulent scheme.  He asserted one claim pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), against Percudani, Powell, Chapel Homes, Chapel Mortgage, and Raintree (collectively "the Percudani defendants").  He asserted a second §1962(c) RICO claim against Chase and Spaner (collectively "the Chase defendants"), and a §1962(d) RICO conspiracy claim against Miller.  He asserted one claim against every defendant under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1 et seq. ("UTPCPL"), and one negligent misrepresentation claim against all defendants.

The defendants filed nine motions to dismiss the Complaint, and one motion to strike and for a more definite statement.  On May 26, 2005, we granted the motion to strike and for a more definite statement, and ordered Plaintiff Carl Silverstein to file an amended complaint joining his wife as a plaintiff and pleading the fraud allegations in support of his RICO claims with greater specificity.  We granted the Chase defendants' motion to dismiss in part, but denied the remaining motions to dismiss.  Plaintiffs Carl and Terry Silverstein filed their Amended Complaint on June 14, 2005 advancing the same five counts as the original complaint.

**III.   Jurisdiction**

Since a federal question is before the Court under RICO, this court has jurisdiction

over this dispute pursuant to 28 U.S.C. § 1331.  This court also has supplemental jurisdiction over the plaintiff's claims that arise under state law, pursuant to 28 U.S.C. § 1367(a), as these claims are "part of the same case or controversy" as the plaintiff's federal claims.  A federal district court exercising supplemental jurisdiction over state law causes of action must apply the substantive law of the State as interpreted by the State's highest court.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 189 (3d Cir. 1998).

## IV.     Standard

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## V.     Discussion

The Chase Defendants, the Percudani Defendants, and Gerald Powell have each filed a motion to dismiss the Amended Complaint.[2]  Each argues that even following the

---

[2] Defendant George Miller has yet to respond to the Amended Complaint because we granted his motion to extend his deadline to respond until twenty days after service of the order accompanying this memorandum.

5

amendments, Plaintiffs have not pleaded their RICO claims with sufficient specificity. For the following reasons, we agree and will grant the motions to dismiss.

To successfully allege a RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as a direct injury to his business or property resulting from the conduct constituting a violation. Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The fourth prong, "racketeering activity," is defined by predicate acts enumerated in 18 U.S.C. § 1961(1), which include both wire and mail fraud. Where fraud is the predicate act, the pleading is subject to heightened requirements of Federal Rule of Civil Procedure 9(b). Warden v. McLelland, 288 F.3d 105, 114 n.6 (3d Cir. 2002). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).

> Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with the Federal Rules of Civil Procedure, which requires that allegations of fraud be pled with specificity. . . . In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. . . . Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision into the allegations of fraud'. . . . Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.

Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004).

In Rolo v. City Investing Company Liquidating Trust, the plaintiffs filed a RICO

6

complaint claiming they were "deceived by a fraudulent marketing scheme which induced them to purchase residential lots and homes at inflated prices." 155 F.3d 644, 648 (3d Cir. 1998). The predicate RICO acts were mail and wire fraud, and thus the complaint was subject to the higher pleading standard of Rule 9(b). Id. at 658. Although the case was initially filed as a class action, the class was never certified and proceeded only with the named plaintiffs. Id. at 651-62. The court recognized that the complaint set forth the general fraudulent scheme in detail, but nevertheless found it lacked the requisite detail as to the harm to the named plaintiffs. Id.

> While many of the allegations relating to the allegedly fraudulent scheme are quite detailed, the Complaint lacks any specific allegations about the presentations made to any of the named plaintiffs. The Complaint includes no information about the actual presentations made to either the [named plaintiffs], including who made the presentation, when it took place, or with reference to what property it was made. The same is true with regard to the allegedly fraudulent mailings. The content of the mailings is described in reasonably specific terms, but when, by whom, and to whom a mailing was sent, and the precise content of each particular mailing are not detailed.

Id.

The plaintiffs explained that they were unaware of the scheme when they purchased their lots, but they failed to specify "who misrepresented and concealed the information and how." Id. The court admonished the plaintiffs for relying on the general class allegations in support of their claim and explained they must "allege what happened to them." Id.

Like the Rolo complaint, Plaintiffs' Amended Complaint sets forth a general scheme in detail but provides few details of the circumstances of how they were defrauded. It

explains in great detail the overall scheme to entice "purchasers, " "customers," and "consumers" to buy properties at inflated values.  However, the details of the overall scheme present a stark contrast to the details provided regarding the harm suffered by Plaintiffs.  The Complaint alleges that the Silverstein's responded to a "Why Rent" advertisement featured in the New York Post sometime early in 1994, visited some defendant's office in Tannersville Pennsylvania in the first quarter of 1994, were contacted by the Percudani Defendants, were shown homes by the Percudani Defendants, somebody represented that their home was worth $145,425 even though the defendants knew this was not true, and somebody prevented them from accessing the home during construction.  Thus, the Amended Complaint does not specify the individuals that met with the Silversteins, the company these individuals represented, the date of these meetings, who misrepresented the value of the homes, or the content of the print advertisement to which they responded.  In identifying with whom the Silversteins met, it alleges that they were shown homes by the "Percudani defendants."  This lacks the requisite specificity.  The "Percudani Defendants" consists of two individuals and three corporate entities. (Amend. Compl.¶ 13).  Thus, it is impossible to discern who made the misrepresentations to Plaintiffs or even who met with them.  "[I]n a case involving multiple defendants, such as the one before us, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" Vicom, Inc., v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-78 (7th Cir. 1994) (citation omitted); see also Saporito v. Combustion Engineering Inc., 843 F.2d 666, 675 (3d Cir. 1988) (dismissing a RICO

complaint based on wire fraud because it did not identify who made the misrepresentations to whom). A complaint that "lumps" together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations. Vicom, 20 F.3d at 778 (7th Cir. 1994). Accordingly, we will dismiss the RICO claims in Counts I and II with prejudice.

In addition, because the RICO conspiracy claim against George Miller in Count III is based on the same fraud averments, we will dismiss this Count as well. Count III alleges that Miller conspired to perpetuate the fraudulent scheme by appraising Plaintiff's homes at an inflated value. Plaintiffs, however, provide no detail of the circumstances by which the value of the home was misrepresented to them. Therefore, for the reasons that Plaintiff's RICO claims fail to satisfy Rule 9(b), his RICO conspiracy claim against Miller fails as well.

We recognize that Miller has not moved to dismiss Count III or even answered the Amended Complaint. However, we will *sua sponte* dismiss Count III because it suffers the same defects as the RICO claims upon which it is based. Plaintiffs received notice that the defendants challenged the sufficiency of his RICO claims, we provided ample opportunity for them to argue that the pleading was sufficient, and we even provided the opportunity to amend the pleading to add specific allegations. See Bryson v. Brand Insulations, 621 F.2d 556, 559 (3d Cir. 1980) ("[F]or a court to grant judgment on the pleadings, *sua sponte*, is not error. The district court may on its own initiative enter an order dismissing the action provided the complaint affords a sufficient basis for the court's action."); Washington

9

Petroleum Company v. Girard Bank, 629 F. Supp. 1224, (M.D. Pa. 1983) (dismissing claims *sua sponte* against a defendant that did not file a motion to dismiss because another defendant's motion raised defects that applied equally to all claims); Sullivan v. Dellots, Inc., No.CIV.A. 97-5457, 1997 WL 778976, at *7 (E.D. Pa. Dec. 17, 1997) (dismissing claims *sua sponte* against a defendant who did not join in a motion to dismiss because the claims against the non-moving defendant suffered from the same defects raised in the moving defendant's motion to dismiss); Aggrey-Kweggyirr Arunga v. AIPAC, No.CIV.A. 93-24, 1993 WL 294074, at *2 (E.D. Pa. July 29, 1993) (recognizing the district court's power to *sua sponte* dismiss claims against non-moving defendants where the claims suffer from the same defects as claims subject to a motion to dismiss, so long as the procedure employed by the district court is fair). Thus, we will *sua sponte* dismiss the RICO conspiracy claim against Defendant Miller because it is predicated on the mail and wire fraud claims that were not pleaded with sufficient particularity to satisfy Rule 9(b).[3]

---

[3] For the same reason, we will *sua sponte* dismiss the claims against the John Doe defendants and Chapel Creek Mortgage Banker, Inc. Plaintiffs have advanced no allegations against the John Doe defendants. They have not identified what actions the John Doe defendants took, or even their role in the scheme. Such a use of fictitious party pleading runs afoul of Rule 9(b), and we will dismiss these entities. Similarly, Plaintiffs assert no allegations against Chapel Creek Mortgage Banker, Inc. other than those they advance against Chapel Creek Mortgage, Inc. whose motion is discussed *supra*. Thus, we will dismiss the claims against Chapel Creek Mortgage Banker Inc. for the same reasons we will grant the Chapel Creek Mortgage Inc.'s motion to dismiss.

**IV.    Conclusion**

Therefore, we will dismiss Plaintiffs' RICO claims with prejudice.[4]  As the sole remaining claims are state law claims, and because the parties are not diverse, we have no jurisdiction.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Therefore, we will dismiss these claims as well.  An appropriate order follows.

---

[4] We will not grant Plaintiffs leave to amend their RICO allegations because we have already provided this opportunity, and even with the amendment, Plaintiffs' pleadings are insufficient.  See Rolo, 155 F.3d at 659 n.14 ("Because plaintiffs have already had ample opportunity to plead the allegations fully and in the proper form, we will not remand this case to the district court in order to provide them with a further opportunity to amend their defective complaint.").

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL B. SILVERSTEIN, | : | No. 3:04cv1262 |
| TERRY SILVERSTEIN, | : | |
|     Plaintiffs | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| GENE PERCUDANI; GERALD A. | : | |
| POWELL; CHASE MANHATTAN | : | |
| MORTGAGE CORP.; CHAPEL CREEK | : | |
| HOMES, INC.; RAINTREE HOMES, INC.; | : | |
| HOMES BY VINTAGE, INC.; Y-RENT; | : | |
| CHAPEL CREEK MORTGAGE BANKER, | : | |
| INC.; CHAPEL CREEK MORTGAGE, | : | |
| INC.; GEORGE D. MILLER; WILLIAM | : | |
| SPANER; JOHN DOE TITLE COMPANY; | : | |
| JOHN DOE ABSTRACT COMPANY; and | : | |
| JOHN DOE MORTGAGE BROKER, | : | |
|     Defendants | : | |

## ORDER

**AND NOW**, to wit, this 22nd day of March 2006, it is hereby **ORDERED** that:

1) The defendants' motions to dismiss (Docs. 49, 51, 54) are hereby **GRANTED**. Counts I-II are dismissed with prejudice because Plaintiff failed to plead his fraud allegations in compliance with Federal Rule of Civil Procedure 9(b). For the same reason, Count III against George Miller is *sua sponte* dismissed with prejudice, and Counts I-III are *sua sponte* dismissed with prejudice to the extent Plaintiffs advance these claims against Defendants Chapel Creek Mortgage Banker, Inc., John Doe Title Company, John Doe Abstract Company, and John Doe Mortgage Broker.

2) Counts IV-V are dismissed for lack of jurisdiction.

3) Defendant Gerald Powell's Motion to Strike (Doc. 64) is **DENIED** as moot.

4) The Clerk of Court is directed to close this case in this district.

                                        **BY THE COURT:**

                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**